# District Court of the Navajo Nation
### Judicial District of Shiprock, New Mexico

**Wanda Benally, Plaintiff,**
v.
**Stanley Benally, Defendant.**
**Decided June 25, 1996**

## JUDGMENT AND ORDER

Judge Lorene Ferguson presiding.

THIS MATTER was heard on April 04, 1994 and this Court entered the following as findings of fact:

1. On December 16, 1992, Plaintiff, upon return from her work at the BHP Mines, picked up her child at the Defendant's house where the child was cared for that day. Defendant is brother to Plaintiff's husband.

2. Upon return to her home, Plaintiff's daughter informed her mother that Defendant threatened to "whip" her if she did not return a black book.

3. Disturbed by this, Plaintiff went back to Defendant's house to inquire further about the incident described by her daughter. Plans in the meantime were made to eat dinner in "town."

4. Upon arriving at Defendant's house, Plaintiff entered and inquired about the black book and Defendant's threat to her daughter.

5. Plaintiff, after entering Defendant's house, was asked to sit down and she stated she wanted to stand and Defendant got up from his seat and walked to Plaintiff, pushed her against the wall and lifted her off her feet by her blouse, then threw her to the floor resulting in scratches, bruises and pain to the face, the arm, the hip and back area.

6. As a result, Plaintiff took fifteen (15) days off from work because of the pain and visits to various doctors.

7. Plaintiff also stated she expended funds to move their mobile home to Kirtland as a result of the incident. Plaintiff claimed she suffered mental distress and anguish, was fearful and uncomfortable around Defendant, who lived in the same area that Plaintiff lived with her family.

8. Mr. Stanley Benally, Defendant, denied he touched Plaintiff and he produced two (2) witnesses who support his claims as follows:

    a. Stanley Benally, Jr.

        1. He (witness) was in the living room watching VCR when Plaintiff arrived at 3:00-3:30 in afternoon. Present with Defendant were himself and his sister, Carmelita.

        2. Wanda Benally stood about five feet from where his father was sitting in the living room.

3. Carmelita was in the kitchen.

4. Plaintiff's child, Veronica, did not come into the house, rather she remained in the car.

5. When Wanda, Plaintiff, came into the house, Stanley Benally, Sr., Defendant, was sitting on the couch and witness, Stanley Jr. testified Defendant never got up from the couch and he never approached Wanda and Wanda did not come close to where he was and Wanda and Stanley had a small argument about a black book.

6. Stanley Jr. testified that only Wanda raised her voice and "yelled" at his dad and he did not see anyone strike the other and they were nowhere within reach of one another.

7. After the argument, Wanda walked back out, and Carmelita, the entire time, remained in the kitchen.

  b. Carmelita Benally

1. Carmelita Benally testified that she did not see Wanda Benally on December 16, 1992. Carmelita said she was not in the living room, but she was in the kitchen. Carmelita said she heard nothing as she had the microwave on. Carmelita was not aware of Wanda's presence. Incident took place close to 5:00 p.m.

9. Wanda Benally, on the other hand, testified to the following:

a. The incident occurred on December 16, 1992 at about 4:45-5:00 o'clock after Veronica, daughter of Plaintiff, informed her mother that "Stanley threatened to whip her."

b. Plaintiff went back to Defendant's house and there she observed Stanley sitting on couch watching television. The couch was against the wall.

c. Plaintiff had her seven year old daughter in her vehicle outside Defendant's house and as Plaintiff entered, she stood by, holding the door knob.

d. Upon Plaintiff's inquiry, Defendant sat on couch looking straight at television and finally he got up and told Plaintiff to sit down "if you want to know." When Plaintiff did not sit down, Defendant stated, "I said sit down over there," at which point, Plaintiff testified she said, "No, it's alright, I'll stand."

e. Defendant walked over to Plaintiff and grabbed her blouse and lifted her against the wall and door and Plaintiff testified she tried to push him back. Defendant did not have his shirt on. Plaintiff stated she said, "What's wrong with you." Thereupon, Defendant threw her on to the floor and Plaintiff landed on her right side in front of and under Stanley Jr. who was sitting on chair, still watching television. Plaintiff testified when she landed she saw Stanley Jr.'s shoes and he moved back his feet so as not to touch her head upon the floor.

f. Plaintiff testified she tried to get herself up and he grabbed her again and pushed her onto the couch but she got up and stood in front of him. Wanda testified she wanted to get out of the house and she told him she was going to file a complaint and he responded, "go ahead, I got witnesses."

g. On Saturday, following the incident, Defendant went to Plaintiff's

house. He talked with Plaintiff's husband. Plaintiff and husband were about to leave the house to see Dr. Smith regarding Plaintiff's condition. Defendant asked how she felt. Defendant talked about the incident with Plaintiff's husband.

10. Veronica Benally, who was a minor, was also allowed to testify once the court was satisfied she was competent to testify. Veronica testified as follows:

a. She informed her mother that Defendant Stanley Benally asked about the black book and he would whip her with his belt.

b. Her mother, Plaintiff, drove her over to Defendant Stanley Benally's house to inquire about what Stanley Benally said to Veronica and her mother parked the vehicle outside Defendant's house. While Veronica stayed in the car, her mother went into the house.

c. Veronica observed from where she sat by the window. She saw Stanley rise and walk toward door. Shortly, thereafter, the window shook. Veronica testified she thought they got into a fight because of the shaking window. She stated, "the last time I saw a trailer window shaking was when Defendant beat up his wife."

d. Veronica also testified as to what she observed. Mother went in, Veronica thought she was happy and there were no scratches. When her mother came out of Defendant's house, she looked sad and she was crying.

11. Harry Benally - Plaintiff's husband also testified as follows:

a. On December 16, 1992, Harry Benally testified he was called home from work and upon his return, Plaintiff was in tears claiming she was assaulted by Defendant. Harry Benally observed bruises on shoulder.

b. Mr. Benally did come to their house (Plaintiff and Harry Benally) to talk about the incident. Defendant told Mr. Benally that he did grab Plaintiff when upon asking Plaintiff to sit and she refused. Defendant told Harry Benally that when he told Plaintiff to sit down, he got up and grabbed Plaintiff. Harry Benally testified that Stanley came to talk with her for about one hour about the incident.

## CONCLUSIONS OF LAW

This is a personal injury case involving battery. Battery is defined as a harmful contact in which:

> An actor is subject to liability to another for battery if:
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> (b) a harmful contact with the person of the other directly or indirectly results. *Torts*, Restatement of the Law 2nd, Sec. 18.

Here the Defendant is alleged to have grabbed the Plaintiff and pushed her up against a wall and then threw her to the floor. The Defendant states that this did not happen. The Court will therefore have to make a determination as to whether

such conduct occurred. Given the testimony by the Plaintiff and her daughter of the incident, if indeed the Defendant grabbed the Plaintiff and pushed her up against the wall and thereupon threw her to the floor, then the Defendant would be liable. Thus, did the Defendant commit the acts alleged by the Plaintiff?

Here, the Plaintiff alleges the Defendants committed the act described above. The Defendant, on the other hand denies it occurred. There is a conflict of testimony on the point of whether the Defendant did push and lift the Plaintiff up against the wall and then threw her down to the floor.

In civil cases, the degree of proof is preponderance or weight of the evidence. Thus, the Plaintiff must establish the existence of facts essential to a recovery by a preponderance of evidence.

> It has been held proper for the Court ... to define the preponderance of the evidence as the greater and superior weight of evidence, evidence more convincing to the jury as worthy of belief then that is in opposition thereto ... or [that] when weighted with that opposed to it, has more convincing force, and from which it results that the greater probability is in favor of the party upon whom the burden rests. 75B Am.Tr. 2d *Trial*, Sec. 1367.

While this was not a jury trial, the burden of proof in a civil case without a jury is consistent with the definition given above.

Witnesses for the Plaintiff consisted of her daughter Veronica, her husband, who is a brother to the Defendant, and her niece, Theresa Redhouse, who she went to see shortly after the incident. Each corroborated the description of the incident and events following the incident as follows:

Daughter, who is seven years old, testified she stayed in the truck while her mother went in, however, she saw the trailer shake and she knew something had occurred. She stated, the last time she saw a trailer shake as such was when someone else was pushed into a wall.

Husband testified that he was informed by his wife of the incident, and the following Saturday, Stanley came to his house to apologize about the incident involving his wife and he asked if everything was "okay." Husband testified that his brother Stanley was referring to the incident in which his wife was battered. He testified that Stanley Benally told him what Wanda told him regarding the incident.

The niece testified that the Plaintiff was upset and experiencing pain when she arrived at her house after the incident occurred, crying and holding her arm as if in pain. She, too, was told of the incident similar in detail as the one told her husband. She also testified the Plaintiff had a scratch on her chin.

On the other hand, the Defendant stated he did not touch the Plaintiff and did not throw her to the ground and the Defendant's witnesses consisted of two of his children. One, Carmelita, who stated first, she was not in the room to see the incident nor did she hear anything and second, that the incident did not occur. The son stated he was in the room and no such incident occurred.

Given the testimony and the witnesses who testified and applying the burden of proof, this Court is satisfied that Stanley Benally did pick up Wanda Benally, push her into the wall and throw her to the floor.

This Court therefore FINDS Defendant Stanley Benally liable.

# DAMAGES

Wanda Benally testified she suffered pain and some contusions in her left side arm and shoulder and pain in her neck and back. Mrs. Benally testified that she sought medical and physical therapy treatment from several doctors and therapists.

Mrs. Benally saw Dr. Wentzel Williams, M.D., a day after the incident on December 17, 1992. Dr. Williams is a family practitioner in Farmington, New Mexico and he stated that Mrs. Benally came to him complaining of pain in back, neck and jaw caused by injury when she was thrown against the wall. Dr. Williams said the Plaintiff complained of tenderness in back, hips and chin and that she suffered contusions and abrasions, as well as shoulder pain.

Dr. Williams indicated that prior to the December 17 visit, he saw Mrs. Benally in September, 1992 for a skin problem and he saw no injuries and that no major back pain was mentioned.

Dr. Williams saw Mrs. Benally again on January 18 and at that time he gave her muscle relaxers. Dr. Williams testified Mrs. Benally was very anxious to go back to work.

Dr. Williams further testified that Mrs. Benally was emotionally upset and had abrasions on her chin and that she had difficulty in turning her back and that she had a tenderness in her upper back and hip. Mrs. Benally, according to Dr. Williams, had multiple contusions on different parts of her body.

Dr. Martin Smith, a chiropractor, also testified. He saw Mrs. Benally on December 17 and 19, 1992, with complaints of neck and shoulder pain and upon examination found Mrs. Benally to be suffering from muscle spasm, usually a result of a hard blow. Because of the type of work she was engaged in, Dr. Smith took her off work on January 20, 21 and 22.

Dr. Smith testified that Mrs. Benally still sees him when she experiences flare ups. The total number of days missed from work because of the injury was eight (8) days.

Dr. William Tso is a family practitioner who also testified. He stated that the injuries described by the Plaintiff were consistent with injuries caused by a hard blow. Dr. Tso testified he had seen Mrs. Benally before but not for shoulder and back pain. Dr. Tso saw Mrs. Benally on four (4) occasions on January 15, 1993, February 1 and 15, 1993, and on June 01, 1993.

Dr. Gersaldt, a physical therapist, treated Mrs. Benally on January 18, 1993. On February, 1993 he applied light therapy and exercises. Mrs. Benally received treatment in January and February.

Dr. Gersaldt did testify that Mrs. Benally had been receiving chiropractic treatment for about eight (8) years and that she suffered a blow to the left side of the

face three-four years ago.

The Plaintiff testified she sought medical and physical treatment from Drs. Williams, Smith, Tso, Gersaldt, Rhein, and Kloberdantz. Drs. Williams, Smith, Tso and Gersaldt testified and their testimony corroborated the treatment obtained by the Plaintiff.

Plaintiff is requesting the following:

$16,505.20 - for bodily pain, emotional distress, fear and anxiety

$10,000.00 - punitive damages

$ 1,500.52 - loss wages

$ 1,500.00 - legal expenses

$ 3,353.66 - moving expenses

The total amount Plaintiff is requesting is $33,521.18.

## GENERAL DAMAGES

*General Damages* - General Damages are compensatory damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated and hence not to be alleged in order to be proved. Restatement of the Law, *Torts*, 2d, Sec. 904.

The comments in the Restatement at comment "a" states, "In many cases in which there can be recovery for general damages, there need be no proof of the extent of the harm, since the existence of the harm may be assured and its extent is inferred as a matter of common knowledge from the existence of the recovery as described."

Here, the Plaintiff alleged she suffered physical and mental pain. She got sick, experienced soreness, contusions, abrasions and she lost sleep and became fearful of Mr. Stanley Benally so that she eventually moved, became depressed, and suffered emotional distress. Where there is bodily harm, physical pain and suffering resulting from the tort, it is regarded as general damages. Plaintiff is requesting $16,505.20 for damages. There is no specific amount attached to any injury or harm.

Damages need to be proved with reasonable certainty meaning that the fact of damages must be taken out of the area of speculation. *Damages*, 22 Am.Jur.2d, Sec 22.

To authorize a recovery of more than normal damages, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the Plaintiff's loss. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some fairly definite standard, such as ... established experience, in direct influence from known circumstances. *Id.*

Here, while there was testimony as to emotional distress, physical pain, and fear, there was no amount of damages assigned to anything in particular. Rather, everything is lumped into one and assigned the amount of damages as $16,000.00.

In *Wilson v. Begay*, 6 Nav. R. 1, 5 (1988), the Navajo Supreme Court required that the Plaintiff establish the amount of his damage with reasonable certainty. An award of damages must be based upon proof and not speculation. A reasonable basis for computation of all damages must appear in the record. Damages may be shown with the best available evidence. In *Wilson v. Begay*, the Court stated that the best available evidence may be the Plaintiff's testimony which would be adequate and the Defendant has the burden of disproving that testimony. Records must show a reasonable justification for the amount awarded. *Id.* at 5. Here, the amount of $16,505.20 was not broken down or justified.

## PAIN AND SUFFERING

This Court is convinced by a preponderance of evidence, however, that the Plaintiff did suffer and was in pain which was caused by the December 16, 1993 incident. While the Plaintiff did not indicate the period she suffered nor did she present any calculations, this Court shall apply $12.00 a day for 167 days which is the period in which she received treatment either by a physician or a physical therapist. Thus, this Court will apply $2,004.00 to pain and suffering.

## EMOTIONAL DISTRESS

The Plaintiff also did not assign a dollar amount to the emotional distress she suffered. This Court is satisfied that the Plaintiff did suffer emotional distress. Plaintiff did obtain nine (9) counseling sessions since December 21, 1992. Plaintiff did miss fifteen (15) days of work since the incident. Overall distress has been measured from moderate to severe. Plaintiff testified that as a result of the incident, her mind "was messed up." Plaintiff also testified that she no longer feels comfortable and safe living where she had lived with her husband and children. She testified that she felt as if all of a sudden she had no right living where she lived. In *Cadman v. Hubbard*, 5 Nav. R. 226 (C.P. Dist. Ct. 1986), the Plaintiff, as a result of the accident, could not run anymore, was not able to lift heavy objects or do manual labor, play basketball or baseball. Here the Plaintiff was placed in a very distressful circumstance with her husband, in-laws and children. The reasonable value for emotional distress suffered by Plaintiff is similar to that suffered by the Plaintiff in *Cadman v. Hubbard*, but to a lesser amount of $2,500.00. The Court finds this a reasonable amount.

## FEAR AND ANXIETY

The Plaintiff also testified she became fearful and anxious and had to eventually move. The Court is satisfied that the Plaintiff was fearful and anxious and the Court shall award $1,000.00 to the Plaintiff for her fear and anxiety.

## SPECIAL DAMAGES

*Special Damages* - are compensatory damages for a harm other than for which general damages are given. Restatement of the Law, *Torts*, 2d.

## MEDICAL EXPENSES

The medical expenses initially claimed by the Plaintiff was $661.50 with indication that additional expenses were to follow. Charges submitted by Dr. Smith amounts to $889.50. Dr. Rhein's amount is $58.00. Dr. Kloberdantz's is $109.00. No amounts were submitted for Drs. Williams, Bergtholdt, Davy, Gersaldt and Tso.

Dr. Gersaldt provided treatment six (6) times. Dr. Tso saw the Plaintiff three (3) times and Dr. Davy saw the patient at least two times. Dr. Bergtholdt saw the patient one time. The average thereof applied by those Drs. who provided amounts is $82.62. Based on that, this Court shall apply $82.62 x 12 visits equally for Drs. Gersaldt, Tso, Davy and Bergtholdt amounting to $991.44. The total amount of medical expenses is $2,709.44.

## MOVING EXPENSES

Moving expenses submitted by the Plaintiff is $3,353.66. At trial, the Plaintiff submitted the expenses as follows:

$347.92 - Installation of satellite
$144.70 - Installation of gas (tank and yard line)
$56.97 - Materials (Hacienda)
$56.97 - Materials (Hacienda)
$58.46 - Materials (Hacienda)
$2,600.00 - Tear down and move (Trailer)
TOTAL: $3,265.02

This Court shall therefore award $3,265.02 for moving and setting up expenses.

## LITIGATION EXPENSES

The Plaintiff is also requesting that the Defendant pay for the cost of bringing in witnesses, particularly the medical doctors and therapist. The Plaintiff requested that this expense be paid by the Defendant and this request was made far after the trial. This Court will not allow such expenses here, although these kinds of costs are allowed under 7 N.T.C., Sec. 752. The Plaintiff should have brought this matter in at the time of trial.

## LOST WAGES

This Court is satisfied that the Plaintiff, because of the December 16, 1992 incident, missed fifteen (15) days of work at $149.12 a day, totalling $2,236.80. The Court shall award $2,236.80 for lost wages to the Plaintiff.

## PUNITIVE DAMAGES

The Navajo Nation Court of Appeals, in *Keeswood v. Navajo Tribe*, 1 Nav. R. 362 (S.R. Dist. Ct. 1978), recognized the right of a Plaintiff to punitive damages. In *Navajo Tribe of Indians v. Jones*, 5 Nav. R. 235 (W.R. Dist. Ct. 1986), the Court allowed punitive damages based upon 7 N.T.C., Sec. 70 (b). That has now been recodified as 7 N.T.C., Sec. 701 (c) and reads, "Where the injury inflicted was deliberately inflicted, the judgment may impose additional penalties in favor of the injured party or in favor of the Navajo Nation."

This Court is satisfied that the Defendant acted in utter disregard, and through ill-will and by oppressive conduct, and that punitive damages would be proper.

The Plaintiff is requesting $10,000.00. This Court, given the circumstances, will award $2,500.00 for punitive damages.

## ATTORNEY'S FEES

Finally, the Plaintiff requested that the Defendant pay for her attorney's fees incurred, resulting from the December 16, 1992 incident, of $1,500.00.

*John v. Herrick*, 5 Nav. R. 129 (1987), sets out the rule in which each party in litigation is responsible for their own attorney's fees unless they fall within one of the three exceptions:

1. When a statute provides for attorney's fees;

2. When the case presents a special set of circumstances; and

3. If a pleading or document is not submitted in good faith, or it contains material misstatements of fact or law, or it is not made upon adequate investigation or research.

Here the Plaintiff did not show any of the exceptions. The attorney's fees request is therefore DENIED.

This Court hereby enters judgment in favor of the Plaintiff for a total of $16,215.26 in damages.